IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, § | | |
| Plaintiff, § | | |
| § | | |
| v. § | | 4:15-CR-038-0 |
| § | | |
| DANTANA TANKSLEY (1), § | | |
| Defendant. § | | |

## Motion to Dismiss Indictment

Comes now Defendant DANTANA TANKSLEY, by and through counsel and respectfully moves this Court to dismiss the indictment for failure to state a constitutional offense. The defendant has been charged with possessing a firearm while being a convicted felon, in violation of 18 U.S.C. § 922(g). (Count Two of the indictment is a forfeiture count requesting forfeiture of the firearm described in Count One). The defendant submits that the indictment alleges conduct that is beyond the power of the federal government to prosecute under the commerce clause. Second, he submits that the proper *mens rea* has not been alleged. He concedes that the issues are foreclosed by circuit precedent but advances the claim to preserve further review. *See United States v. Alcantar*, 733 F.3d 143 (5th Cir. 2013) and *United States v. Rose*, 587 F.3d 695, 706 (5th Cir.2009).

### I. The statute as construed by the Fifth Circuit is unconstitutional.

"In our federal system, the National Government possesses only limited powers; the States and the people retain the remainder." *Nat'l Fed'n of Indep. Bus. v. Sebelius*, __ U.S. __, __, 132 S.Ct. 2566, 2577 (2012)(Roberts. C.J.)(plurality op.). Powers outside those explicitly enumerated by the Constitution are denied to the National Government. *See Nat'l Fed'n of Indep. Bus.*, 132 S.Ct. at 2577 ("The Constitution's express conferral of some powers makes clear that it does not grant

1

others.")(Roberts. C.J.)(plurality op.) There is no general federal police power. *See United States v. Morrison*, 529 U.S. 598, 618-619 (2000). Every exercise of Congressional power must be justified by reference to a particular grant of authority. *See Nat'l Fed'n of Indep. Bus.*, 132 S.Ct. at 2578 (Roberts. C.J.)(plurality op.)("The Federal Government has expanded dramatically over the past two centuries, but it still must show that a constitutional grant of power authorizes each of its actions.") A limited central government promotes accountability and "protects the liberty of the individual from arbitrary power." *Bond v. United States*, 564 U.S. __, 131 S.Ct. 2355, 2364 (2011). The Constitution grants Congress a power to "regulate Commerce with foreign Nations, and among the several States, and with the Indian Tribes." Art. I, § 8, cl. 3. But this power "must be read carefully to avoid creating a general federal authority akin to the police power."*Nat'l Fed'n of Indep. Bus.*, 132 S.Ct. at 2578 (Roberts. C.J.)(plurality op.).

The Fifth Circuit has held that 18 U.S.C. §922(g) does not exceed Congress's power to regulate interstate commerce. *See United States v. Wallace*, 889 F.2d 580, 583 (5th Cir. 1989). But the opinion of five Justices in *Nat'l Fed'n of Indep. Bus. v. Sebelius* casts serious doubt on that conclusion. Five Justices in that case concluded that the power to regulate commerce does not include the power to compel commerce. *See id.* at. 2586 (Roberts, C.J.)(plurality op.); *id.* at. 2642(Scalia, .J., dissenting). The inescapable conclusion is that to fall within the commerce power, federal action must not merely affect commerce, it must act directly on a commercial activity. After all, the failure of individuals to purchase health insurance – at issue in *NFIB* – surely **affected** interstate commerce. *See id.* at. 2642 (Scalia, .J., dissenting)("Failure to act does result in an effect on commerce . . .") But because inaction was not a commercial act, it was beyond the power of Congress to prohibit. Similarly, mere possession of a firearm that may have crossed state lines years

2

ago is not a commercial act. It does not involve the purchase or sale of any commodity. Certainly, possession of such a firearm does not amount to an act of interstate commerce.

The indictment in this case alleges that Defendant possessed a firearm "in and affecting commerce." This phrase is operationally defined by Fifth Circuit precedent to mean that the firearm crossed state lines at some unspecified point in the past; it does not allege that the defendant purchased the firearm, or possessed it in connection with any manner of commercial transaction. *See Wallace*, 889 F.2d at 583. Nor will the government be capable of proving any more than this. As the indictment does not allege, and the government cannot prove, an offense falling within the commerce clause, the indictment should be dismissed. Put another way, 18 U.S.C. 922(g) violates the commerce clause facially and as applied.

Defendant concedes that this argument has been rejected as inconsistent with pre-*NFIB* Fifth Circuit precedent. *See Alcantar*, 733 F.3d at 146. It is asserted to preserve further review in the event that: 1) the Supreme Court or the *en banc* Fifth Circuit overrules *Alcantar*, 2) *Alcantar* is altered by panel rehearing, or 3) the decision is otherwise abrogated by a binding authority.

## **II. The indictment does not allege the proper *mens rea*.**

<u>The plain language of the statue which limits prosecutions to one who "knowingly violates" the statute</u>

The indictment fails to allege that the defendant knew that he had the status that prohibited him from possessing firearms, nor does it allege the he knew that his possession of the weapons was in or affecting interstate commerce.

In 1986, Congress passed the Firearms Owners Protections Act [FOPA]. A major thrust of this legislation was to alter the previous federal criminal law governing firearms by explicitly doing

3

away with strict liability or quasi strict liability for offenses. Thus, Congress added the requirement in 18 U.S.C. § 924, that for a person to be liable for punishment, the government must prove that the person either willfully or knowing violated the relevant section of § 922(g). The explicit language of the relevant statute in this case allows the government to punish "[w]hoever **knowingly violates** subsection . . . (g) . . . of 922 . . . ." (Emphasis added.)  The statute simply does **not** punish whoever "knowingly possesses a firearm" if that person happens to be a felon. Nor does the statute punish whoever "knowingly possesses a firearm" if the firearm possession happens to be in or affect interstate commerce.  It punishes "whoever knowing violates" the statute.

Knowing possession of a weapon is obviously not by itself a crime.  The statute requires a knowing violation of § 922(g). Thus, by the plain words of the statute, the defendant must know these three things: that he is a felon, that he possessed a weapon, and that the possession of the weapon was in or affecting interstate commerce.

<u>The Supreme Court has held that the government must prove the defendant knew all the circumstances that make his possession of a weapon a federal offense</u>

The Supreme Court has held that the knowing violation requirement in 18 U.S.C. § 924 requires the government to prove that the defendant did have "knowledge of the facts that constitute the offense." *Bryan v. United States,* 524 U.S. 184, 193 (1998) Yet again, in *Flores-Figueroa v. United States*, 556 U.S. 646 (2009), following a line of cases, the Court held that when a statute requires the government to prove the defendant acted knowingly, it must proof he knew the facts that made his conduct a federal offense. *Id.* at 650-57 1891. In *Staples v. United States*, 511 U.S. 600, 618-19 (1994), the Court held that, even when a statute has no explicit "knowing" element, the government must prove that a defendant had knowledge of "the facts that make his conduct illegal."

In *Staples*, the Supreme Court noted that there is a "presumption that a defendant must know the facts that make his conduct illegal" which "should apply" especially where the alternative is that the statute "would require the defendant to have knowledge only of traditionally lawful conduct. . . ." *Id.* Here, the knowing possession of a firearm is not only traditionally lawful conduct, it is a fundamental right. *See District of Columbia v. Heller*, 540 U.S. 570, 602 (2008). Also, the Supreme Court noted that the "severe penalty" of a potential 10-year sentence suggested that Congress did not intend to jettison the usual requirement that the defendant know the facts that make his conduct illegal. *See Staples,* 511 U.S. at 618. Here, the maximum penalty for a § 922(g) case can be life, if enhancements apply. See 18 U.S.C. § 924(e).

> The legislative history also directly supports the idea that Congress intended that the government must prove the defendant knew the facts and circumstances that constitute the offense.

Congress explicitly stated that the government must prove the defendant knew the facts and circumstances that constitute the offense. "It is the Committee's intent, that unless otherwise specified, the knowing state of mind shall apply to circumstances and results." H.R. Rep. No. 99-495, 99 Cong., 2d Sess. 25-26, reprinted in 1986 U.S. Code Cong. and Ad.News 1327, 1351-52. As noted above, a major thrust of the FOPA was to completely alter the gun laws to abolish or alter the perceived "strict liability" created by the absence of any scienter requirement in the statute, and by the Supreme Court's decision in *United States v. Freed*, 401 U.S. 601, 609 (1971).

A panel of this Court wrongly decided this issue in *United States v. Dancy*, 861 F.2d 77 (5th Cir. 1988), but in light of *Bryan*, *Staples*, and *Flrores-Figueroa*, and other Supreme Court cases, that decision is not valid.

## Conclusion

Defendant Dantana Tanksley respectfully moves this Court to dismiss his indictment, or for such relief as to which he may be justly entitled.

Respectfully submitted,

/s/Christopher A. Curtis
Christopher A. Curtis
Assistant Federal Public Defender
Texas Bar No. 05270900
819 Taylor Street
Room 9A10
FORT WORTH, TX 76102
(817) 978-2753
(817) 978-2757  Fax
Chris_curtis@fd.org
Attorney for Defendant

## CERTIFICATE OF CONFERENCE

I, Christopher A. Curtis, hereby certify that I conferred with Frank Gatto, the Assistant United States Attorney assigned to this matter, and he was opposed to this motion.

/s/ Christopher A. Curtis
Christopher A. Curtis

## CERTIFICATE OF SERVICE

I, Christopher A. Curtis, hereby certify that on February 13, 2015, I electronically filed the foregoing motion with the clerk for the U.S. District Court, Northern District of Texas, using the electronic filing system for the court.  The electronic case filing system sent a "Notice of Electronic Filing" to the following attorneys of record who have consented in writing to accept this Notice as service of this document by electronic means: Dan Cole

/s/ Christopher A. Curtis
Christopher A. Curtis
